**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 1:17-cr-104 |
| | : | |
| THOMAS SCOTT BROWN | : | |
| | : | |

## DEFENDANT THOMAS BROWN'S SENTENCING MEMORANDUM

### I.   PRELIMINARY STATEMENT

The defendant THOMAS SCOTT BROWN, by and through his undersigned attorney, hereby submits his Sentencing Memorandum to the Court for consideration before his sentencing on September 15, 2017.  As explained more thoroughly in this Memorandum, Mr. Brown should be sentenced to a term far below the advisory guideline range because such a range:

- ignores specific factors that the law requires this Court to consider;

- is not based on empirical evidence or natural experience; and

- is the product of provisions that place too much emphasis on amount of loss.

Sentencing Mr. Brown to a term within the guideline range would ignore several key and necessary facts about this case including the fact that:

- Mr. Brown pled guilty and accepted responsibility for his actions quickly;

- Mr. Brown has already collected $300,000.00 to pay towards restitution;

- Mr. Brown has the ability to continue to pay restitution through rental properties that he operates; and

- Mr. Brown an exceptional background and characteristics that afford him a large and faithful support network.

## II.   <u>FACTUAL BACKGROUND</u>

On June 9, 2017 Mr. Brown signed a Waiver of an Indictment and was charged by Criminal Information with one count of bank fraud and one count of making a false statement to a financial institution.  On that same day, Mr. Brown pled guilty to both counts.  The Presentence Investigation Report (the "PSR") and the Government's Statement of Facts (Doc No. 6) both set forth facts surrounding Mr. Brown's offenses.  Mr. Brown accepts those facts and takes full responsibility for his role in the offenses, as demonstrated by the decrease in Mr. Brown's guideline offense level by 3 points for his acceptance of responsibility.

The Probation Officer calculated an advisory guideline range of 51 to 63 months, which is the result of total offense level of 24 and a criminal history category of I.  As noted in the PSR, while Mr. Brown stipulated to several enhancements that make up his total offense level, he disputes the 2-point enhancement for a specific offense characteristic.  Specifically, the PSR includes a 2-point increase for deriving more than $1,000,000 in gross receipts from a financial institution pursuant to USSG § 2B1.1(b)(16)(A).  As stated in Paragraph 12 of the Application Notes of § 2B1.1, the gross receipts to the defendant "individually, rather than to all participants" must exceed $1,000,000.  Here, there is no allegation that Mr. Brown individually collected receipts in excess of $1,000,000.  As such, the 2-point increase should be deleted and the offense level computation recalculated to a score of 22.  This would result in an advisory guideline range of 41 to 51 months.  However, the purpose of this Sentencing Memorandum is to argue that Mr. Brown should be sentenced to a term less than *any* U.S. Sentencing Commission guideline range

that this Court finds to be appropriate.[1]  Specifically, a U.S. Sentencing Commission guideline range will always yield an improper, unjust and overly-harsh sentence in this matter because such a range by design (1) ignores specific factors that the law requires be considered in sentencing a defendant; and (2) is not based on empirical evidence or national experience.  For these reasons, as detailed below, using a U.S. Sentencing Commission guideline range to calculate Mr. Brown's ultimate sentence will result in a sentence that is far greater than necessary to promote the goals of sentencing in this case.

**III.   THE SENTENCING GUIDELINES ARE ADVISORY IN NATURE AND PROVIDE FOR A SENTENCE IN THIS MATTER THAT IS GREATER THAN NECESSARY TO ACHIEVE THE PURPOSES OF SENTENCING SET FORTH AT 18 U.S.C. § 3553(A)**

**A.  The Guidelines Are Advisory**

As the Court is well aware, the United States Supreme Court in the consolidated cases of *United States v. Booker* and *United States v. Fanfan*, 125 S. Ct. 738 (2005), previously ruled that the language in the Sentencing Reform Act making the Federal Sentencing Guidelines mandatory should be stricken.  The Guidelines thus, in the words of the Court, became "effectively advisory" in all cases.  *Id.* at 757.  This made the Guidelines just one factor among several that sentencing courts are required to consider in imposing a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

Over the past several years, the Supreme Court has given judges the power to impose sentences that are not greater than necessary to satisfy the statutory purposes of sentencing, to consider all of the characteristics of the offender and circumstances of the offense, to reject

---

[1] Mr. Brown objects to a sentence within any guideline range, whether it be the 51 to 63 month range calculated by probation or some other range properly calculated by the Court after consideration of arguments raised by counsel.

advisory guidelines that are not based on national sentencing data and empirical research, and to serve their function in the constructive evolution of responsible guidelines. *See United States v. Booker*, 543 U.S. 220 (2005); *Rita v. United States*, 127 S. Ct. 2456 (2007); *Gall v. United States*, 128 S. Ct. 586 (2007); *Kimbrough v. United States*, 128 S. Ct. 558 (2007); *Spears v. United States*, 129 S. Ct. 840 (2009).

According to 18 U.S.C. § 3553(a)(2), the four purposes of sentencing are retribution, deterrence, incapacitation and rehabilitation. In determining the sentence minimally sufficient to comply with the § 3553(a)(2) purposes of sentencing, the Court must consider several factors listed in Section 3553(a). These are (1) "the nature and circumstances of the offense and history and characteristics of the defendant;" (2) "the kinds of sentences available;" (3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7). Thus, if the Court finds that the sentence called for by the now advisory Sentencing Guidelines is greater than necessary to comply with the purposes of sentencing, § 3553(a) requires the Court to impose a more lenient sentence, and gives the Court authority and discretion to do so.

### B. The Guidelines Fail To Take Into Account § 3553 Factors

#### 1. <u>Consideration of Certain Defendant Characteristics Prohibited</u>

Section § 3553(a)(1) requires a sentencing court to consider the "history and characteristics of the defendant." However, under the Federal Sentencing Guidelines, courts are generally forbidden to consider a number of characteristics in reaching the initial guideline range including, the defendant's age, U.S.S.G. § 5H1.1; his education and vocational skills, § 5H1.2; his mental and emotional condition, § 5H1.3; his physical condition including drug or alcohol

dependence, § 5H1.4; his employment record, § 5H1.5; his family ties and responsibilities, § 5H1.6; his socio-economic record, § 5H1.10; his civic and military contributions, § 5H1.11; and his lack of guidance as a youth, § 5H1.12.  The Guidelines' prohibition against considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant.  The only aspect of a defendant's history that the Guidelines permit courts to consider is criminal history.  Thus, in a case such as the present one where the defendant's history and character implicate factors that are barred from consideration in reaching a guideline range, the resulting range will be woefully inadequate and directly at odds with federal statute.  As such, the guideline range should not be used as the range to reach Mr. Brown's ultimate sentence.

The foregoing analysis supports the position that every individual sentence requires careful consideration of the 3553(a) factors to determine a sentence sufficient but not greater than necessary. Mr. Brown asks this Court to conduct such a meaningful consideration of the § 3553(a) factors and sentence him below the resulting guideline range.

### 2.  Mr. Brown's History and Characteristics Warrant a Sentence below the Guideline Range

The PSR examines and sets forth several characteristics of Mr. Brown that weigh in favor of a sentence below the advisory guideline range.  First, Mr. Brown's background shows him to be an exceptional individual.  Mr. Brown graduated from Hampton University in 1992 with a Mathematics degree.  One year later, Mr. Brown graduated from The Ohio State University with a Master of Arts degree in Education Policy and Leadership.  Mr. Brown's education did not stop there, as he went on to graduate from Clark Atlanta University in 1999 with a Specialist in Education degree.  Mr. Brown utilized his advanced education by serving as a teacher from 1995 to 2003.  Mr. Brown's dedication to teaching was recognized when he received the Bazoline E.

Usher Middle School Teacher of the Year Award in 1988.  His passion and dedication was recognized on every level of Government from the Atlanta City Council to the Georgia Governor's Office to the U.S. Department of Education to President Bill Clinton and Vice President Al Gore.  *See* Acknowledgements attached hereto as Exhibit A.

Additionally, Mr. Brown's characteristics indicate that he is a unique, caring and helping individual that enjoys tremendous support from his family and community.  As shown in the numerous character letters offered on Mr. Brown's behalf, Mr. Brown's life has been defined by repeated incidents of extraordinary care and concern for others.  *See* Letters attached hereto as Exhibit B.  Whether he is driving thousands of miles to support children (both his, and others') in sports, or helping a child earn a scholarship to attend college, Mr. Brown has shown throughout his life that he is a compassionate person.  Ironically, it is from this same place of compassion that drove Mr. Brown to make unwise and unfortunate decisions regarding the properties at issue here.

Those poor decisions notwithstanding, Mr. Brown's compassion for others is likely the reason he now has so much support from others.  That support has resulted in Mr. Brown collecting $300,000.00 to contribute to his first restitution payment.  The money was raised prior to sentence and has been deposited into undersigned counsel's escrow account.  Proof of such has been provided to Probation Officer Tracey White.

Together, these facts about Mr. Brown's history and characteristics, facts that are not considered by the guidelines, indicate that a sentence within the advisory guideline range would be a sentence greater than necessary to comply with the purposes of sentencing.

**3.** **The Remaining § 3553(a) Factors Also Warrant a Sentence Below the Guideline Range**

A consideration of other § 3553(a) factors shows that a sentence below the advisory guideline range is appropriate.  The Court has a host of "kinds of the sentences" available in this matter as there are no mandatory minimums or required terms of incarceration at play.  The only mandatory type of sentence here is restitution and Mr. Brown has already made substantial efforts to pay restitution by raising $300,000 before sentencing.  Indeed the Court could rightfully sentence Mr. Brown to home confinement or probation and allow him to continue to pay restitution through the rental properties that he operates.  Additionally, a sentence below the advisory guidelines would address the need to avoid unwarranted sentencing disparity, another § 3553(a) factor.  As shown below in a discussion of the sentencing of defendants in fraud cases in the Fourth Circuit, courts commonly sentence defendants in Mr. Brown's situation to terms less than the advisory range.  As such, the Court should do so here.

**C.  The Fraud Guideline Places Too Much Emphasis On Amount Of Loss**

In considering "the kinds of sentences available;" and the advisory Guidelines, as proscribed by § 3553(a), this Court should consider the flaws of the Theft and Fraud Guidelines, §2B1.1, given that the §2B1.1 guideline range recommends a period of imprisonment of 51 to 63 months.

**1.  The History of the Theft and Fraud Guidelines**

The current Theft and Fraud Guidelines (USSG § 2B1.1) are the result of a merger of the former theft guidelines (USSG § 2B1.1) and the fraud guidelines (USSG § 2F1.1).  Unfortunately, the Theft and Fraud Guidelines are flawed, as they are not the result of empirical analysis.  In particular, in creating the fraud guidelines, the Sentencing Commission sought to correct the perceived under-punishment of white-collar offenders by ordering "short but definite"

incarceration for these defendants.  *See* U.S. Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing* 56 (Nov. 2004).  The Sentencing Commission's view was that the possibility of prison would "act as a significant deterrent to [fraud-related] crimes, particularly when compared with the [then-] status quo where probation, not prison, [wa]s the norm."  USSG 1987 Manual, ch. 1 pt. (4)(d).  *See also*, Frank O. Bowman III, *The 2001 Federal Economic Crime Sentencing Reforms*, 35 Ind. L. Rev. 5, 29 (2001) ("[T]he original Sentencing Commission consciously chose to set penalties for economic offenses above their pre-Guidelines levels.").  However, the Sentencing Commission's view that the possibility of incarceration serves as a better deterrent than probation was and is still without strong empirical support.  In fact, "there is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."  Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 448-49 (2007).  *See also*, David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587, 597 (1995) (conducting a study of 742 white collar defendants in federal court, and finding "no evidence of a specific deterrent effect of prison").

The former theft and fraud guidelines each sustained several amendments over the years and were eventually merged in 2001 as part of the Sentencing Commission's "Economic Crime Package."  *See* USSG 2001 Manual, App'x C, amend. 617, Reason for Amendment.  Through these reforms, the Sentencing Commission raised the base offense level for theft from four to six, and raised most offense levels on the loss table.  *Id*.  It has been held that the increased penalties brought on by the merger of offenses "were based, in part, on an ill-guided effort to create rough parity with the drug guidelines, which themselves lacked empirical basis."  David Debold &

Matthew Benjamin, Essay, *"Losing Ground" – In Search of a Remedy for the Overemphasis on Loss and Other Culpability Factors in the Sentencing Guidelines for Fraud and Theft*, 160 U. Pa. L. Rev. PENNumbra 141, 145 (2011) (citing Hon. Joe Kendall, Remarks at U.S. Sentencing Comm'n Symposium Panel on the Nature and Severity of Punishment for Economic Crimes: Determinants of Offense Seriousness and Offender Culpability, 54-69 (Oct. 12, 2000)).  This history shows that the original fraud guidelines were not the product of empirical analysis.  In turn, this flawed history undermines the reliability of the current Theft and Fraud Guidelines.

**2.   Reliance on Amount of Loss is Faulty**

The Theft and Fraud Guidelines' heavy emphasis on loss is problematic given that, as many courts have found, loss is only one imperfect measure of a defendant's culpability.  *See United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012); *United States v. Watt*, 707 F. Supp. 2d 149, 155 (D. Mass. 2010); *United States v. Lenagh*, No. 8:07CR346, 2009 WL 296999, at *6 (D. Neb. Feb. 6, 2009); *United States v. Adelson*, 441 F. Supp. 2d 506, 509 (S.D.N.Y. 2006); *United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D.N.Y. 2004). The false focus on the amount of loss undermines the Guidelines' utility for all defendants subjected to the Guidelines.  Judge Rakoff acutely summed up the Theft and Fraud Guideline's history and its current deficiencies:

> In fairness, [the] vast increase in white-collar sentencing was partly mandated by Congress, reacting in turn to public outcry over such massive frauds as Enron and WorldCom.  But in implementing the Congressional mandate, the Sentencing Commission chose to focus largely on a single factor as the basis for enhanced punishment: the amount of monetary loss or gain occasioned by the offense.  By making a Guidelines sentence turn, for all practical purposes, on this single factor, the Sentencing Commission effectively ignored the statutory requirement that federal sentencing take many factors into account, *see* 18 U.S.C. § 3553(a), and, by contrast, *effectively guaranteed that many such sentences would be irrational on their face*.

*Gupta*, 904 F. Supp. 2d at 351 (emphasis added).

Because of this deficiency, "judges are increasingly willing to go below the Guidelines when they impose sentences in white-collar cases." *See* Mark H. Allenbaugh, *Drawn from Nowhere: A Review of the U.S. Sentencing Commission's White-Collar Sentencing Guidelines and Loss Data*, 26 Fed.Sent.R. 19 (2013). This trend is true for sentencing courts in the Fourth Circuit. In 2016, the Fourth Circuit sentenced 646 defendants for fraud. *See*, U.S. Sentencing Commission, Statistical Information Packet, Fiscal Year 2016 Fourth Circuit (Table 10), attached hereto as Exhibit C. Of those defendants, only 299 or 46.3% of the defendants were sentenced within the calculated guideline range. This number is in line with the 2016 national percentage for fraud defendants of 42.7%. *Id.* Moreover, in 2016, 151 or 23.4% of the fraud defendants appearing before judges in the Fourth Circuit were sentenced below the guideline range under *Booker*. *Id*. Importantly, in 2016, fraud defendants in the Fourth Circuit were sentenced to less time that Mr. Brown's advisory guideline range. The Mean length of imprisonment for fraud defendants was 38 months while the Median length was 28. *Id*. at Table 7. These Fourth Circuit statistics support a sentence below the advisory guideline range in this matter.

The most evident proof that the Theft and Fraud Guidelines are deficient is the fact that the American Bar Association put together a task force to offer a replacement to these particular guidelines. The American Bar Association's Task Force on the Reform of Federal Sentencing for Economic Crimes ("ABA Task Force") consists of five professors, three judges, six practitioners, two organizational representatives, and observers from the Department of Justice and the Federal Defenders. *See* A Report on Behalf of the American Bar Association Task Force on the Reform of Federal Sentencing for Economic Crimes (November 10, 2014), attached hereto as Exhibit D. The ABA Task Force's draft replacement completely revamps the current Theft and Fraud Guidelines by providing a base offense level of between 6 and 8 and offering

only three specific offense characteristics that take into account amount of loss, culpability and victim impact. *Id*. The proposed guideline contains a loss table, but, in an effort to de-emphasize the importance of loss, there are only six levels for loss, *id*., as opposed to the sixteen levels in the current Theft and Fraud Guidelines. The ABA Task Force's de-emphasis on amount of loss and increased emphasis on culpability is in line with the ABA's long-standing position that the current Theft and Fraud Guidelines should be substantially simplified, and promote greater judicial discretion in calculating the appropriate guideline sentence. *See* Letter from Thomas M. Susman to the Honorable Patti B. Saris (Aug. 25, 2011) (attaching Report in Support of Resolution Supporting Reform of the Federal Sentencing Guidelines for Economic Crimes), attached hereto as Exhibit E.

These factors establish an unjustifiable over-reliance on the amount of loss in determining a guideline range for a 2B1.1 fraud offense. Judge Rakoff appropriately summarized the deficiency of this over-reliance as producing ranges and sentences that are irrational on their face. For these reasons, Mr. Brown should be sentenced to a term below the resulting guideline range.

IV.    <u>**CONCLUSION**</u>

For the reasons stated above, Mr. Brown respectfully asks this Court to impose a sentence below the guideline range reached after considering the PSR and any arguments raised by counsel.

Respectfully Submitted,

**ROSS LEGAL PRACTICE, LLC**

BY:    /s/ Riley H. Ross III
        Riley H. Ross III, Esq.
        Two Penn Center
        1500 JFK Blvd., Suite 1525
        Philadelphia, PA 19102
        (215) 587-7177 (office)
        (215) 703-8480 (cell)
        (215) 587-0628 (fax)
        rileyross@rosslegalpractice.com

Date:   September 8, 2017

**CERTIFICATE OF SERVICE**

I, **Riley H. Ross III**, certify that on this date I caused a true and correct copy of the above Sentencing Memorandum to be filed via the Court's electronic filing system and that the document is available for viewing and downloading.


Date: September 8, 2017                    /s/ Riley H. Ross III
                                           Riley H. Ross III